# Wusthoff *against* Dracourt.

A devise of a house, "Reserving, however, two of the rooms of said house for the use and during the life of W. I desire by this fourth article that the widow W. may have the choice of those two rooms which shall the best suit her, because I desire that the said W. should be sure of a shelter during the time she may have to live." Held: that this reservation vests in W. an estate in the two rooms for life, of which she may make any disposition. It does not create a mere easement for her personal use.

It is not every uncertainty or ambiguity apparent on the face of an instrument which will justify the introduction of parol evidence to explain it: it is only in those cases where the ambiguity avoids the instrument.

ERROR to the common pleas of *Alleghany* county.

Ejectment by Henrietta Dracourt against Charles Van Bonhorst, Hugh Toner and Mary Wusthoff.

The case depends entirely upon the construction of a clause in the will of Peter Magnier deceased; and is an ejectment for the two lower rooms of a three story brick house in the city of Pittsburg.

The will of Peter Magnier was originally written in French, and

the clause devising this property has been translated as follows.  " I give and devise to Henrietta Miller, the wife of Julien Dracourt, the house which I at present occupy ; which house is situated at the west end of the marketplace, to be by her enjoyed during her life only : which house shall descend, after her death, to those children who are now born, or shall be born of her and Julien Dracourt : reserving, however, *two of the rooms* (' chambres') of said house, for the *use* and during the life of the widow, Mary Wusthoff, mother of said Henrietta Miller, and wife of Julien Dracourt. · I desire by this fourth article that the widow Wusthoff may have the choice of those two rooms (chambres) which shall the best suit her ; because I desire that the said widow, Mary Wusthoff, should be sure of a shelter, home (retrait), during the time she may have to live."

After the death of the testator, Julien Dracourt, then husband of the plaintiff, on the 15th of June 1827, gave notice to Mrs Wusthoff to select her two rooms, under the will, and take possession of them, and deliver up the possession of the remainder of the house to him. She accordingly selected the two apartments on the first floor, nearly equal in value to all the rest of the house ; but instead of occupying them, she, with the concurrence of Dracourt, rented them out, and continues to receive the rents.

Julien Dracourt, the plaintiff's husband, died some two years ago, and the plaintiff believing that her mother's selection of the two most valuable apartments for the purpose of leasing them out, while she leaves her daughter to pay the taxes and ground rent of the whole house, is not according to the true meaning and intent of the will of Peter Magnier deceased, has instituted this ejectment for the two lower rooms in possession of the tenants of Mrs Wusthoff, and contends :

1. That the house is devised to her (plaintiff) for life absolutely ; that there is no devise either directly or by implication to her mother of any estate in the two rooms she may select, but merely a reservation for her personal use, comfort and convenience ; an easement, which, if she does not see fit to occupy for a shelter or retreat, the possession and rents of the whole house belong to the plaintiff.

2. That even supposing this reservation was not a mere personal privilege ; yet that a correct construction of the will, and more particularly of the French word " chambre," would confine the defendant's choice to the sleeping rooms, or upper rooms of the house, and would not give her a right to select the lower apartments ; more especially the front one, which was evidently intended for a shop or office, and has always been used as such.

The court below was of opinion that the law was in favour of the plaintiff in both points, and so instructed the jury, who gave a verdict accordingly.

*Burke* and *Metcalf*, for plaintiffs in error.
*Lowrie* and *Fetterman*, for defendant in error.

III.—FF·

[Wusthoff v. Dracourt.]

The opinion of the court was delivered by

ROGERS, J.—This is an action of ejectment for the two lower rooms of a three story brick house in the market square, Pittsburgh. It involves the construction of the will of Peter Magnier, written in French, but of which the following is admitted to be a correct translation :

"I give and devise to Henrietta Miller, the wife of Julien Dracourt, the house which I at present occupy, which house is situated on the west end of the marketplace ; to be by her enjoyed during her life only : which house shall descend, after her death, to those children who are now born, or shall be born of her and Julien Dracourt : reserving however (or nevertheless) two of the rooms (chambres) of the said house, for the use of and during the life of the widow Mary Wusthoff, mother of said Henrietta Miller, and wife of Julien Dracourt.

"I desire by this fourth article, that the widow Wusthoff may have the choice of those two rooms (chambres) which shall best suit her ; because, I desire that the said widow Wusthoff shall be sure of (or certain of) a shelter (home) during the time she may have to live."

Two questions arise on the construction of this clause in the will. First, as to the right of choice ; and secondly, the interest the widow Wusthoff takes under the devise.

It is contended, that the word *chambre* means a sleeping room, or room in the upper story. And this cause will depend in a great measure upon the correctness of this translation ; for if the plaintiff is right in his allegation, that by the French word *chambre* the testator is to be understood as intending to devise a sleeping room, or room in the upper story of the building, then it is apparent that the widow would be prevented from selecting other than a chamber of that description. And on this part of the case I must observe, that this consequence will not be prevented by the construction put upon the will by her late husband ; the agreement entered into between her and the defendant, Mrs Wusthoff, for the joint leasing of the property ; nor by the receipt of rent by the plaintiff since the death of the husband. Henrietta Dracourt was not a party to the agreement between her husband and mother. If she had been, then it might have been contended with some prospect of success, that her acts since his death were a confirmation of that arrangement.

If, however, on the other hand, the word *chambre* answers to the English word *room*, it is plain that there is nothing on the face of the will which confines her choice to a sleeping room, or rooms in the upper story. The testator gives her the choice of those two rooms which shall best suit her, and this includes as well the rooms in the lower story, as the apartments above. As he has, for reasons the the propriety of which cannot be questioned, not restricted her choice, we cannot by an arbitrary construction limit the selection to any part of the building. And although the testator expresses his intention to be, that she should have a shelter or home during life, I see

nothing in that which can have the effect of restricting the selection she may think proper to make.

But it is said that, assuming that the testator had used the word "room," the will must be taken in connection with the situation of the property, and that from this we are at liberty to infer the intention of the testator; that this is a case of a latent ambiguity, when parol testimony may properly be resorted to, to explain the intention of the testator. Evidence was accordingly given, without objection, as it would seem, as to the peculiar situation of the house. That it was a three story house in the Diamond on Market square, in which every house has a front room below occupied as a shop or office. That the house has two front doors, one of which opens directly into the front apartment. That it was so used by the testator when he made his will, and that Mrs Wusthoff was his housekeeper, and occupied the other apartment of the house. That it was occupied as an office by Judge Shaler before the death of the testator, and has been so used since his death. In general, it is true, that a latent ambiguity (that is an ambiguity arising from extrinsic evidence) may be removed by extrinsic evidence. The difficulty, Judge Story remarks in Peck *v.* Dickson, 1 *Mass. Rep.* 11, lies not in the rule itself (than which nothing can be clearer), but in applying it to particular cases where the shades of distinction are very nice.

It is not every uncertainty or ambiguity apparent on the face of an instrument which will justify the introduction of parol testimony to explain it. It is only in those cases where the ambiguity avoids the instrument. Courts of law have always leaned against extrinsic evidence to explain the intention of the testator. There is in fact but one case where it is permitted, and that is where the ambiguity is introduced by extrinsic circumstances. And in such cases parol evidence is admitted from necessity. The illustration of this rule most usual is that of a description in a will of a devisee, or of an estate where it turns out that there are two persons or two estates of the same name and description. · Jones *v.* Newman, 1 *Bl. Rep.* 60; Lord Cheney's case, 5 *Co.* 68 *b.* Thus where a testator devises his estate of Blackacre, and has two estates called Blackacre, evidence is admitted to show which of the Blackacres is meant. So if one devise to his son by name, and have two sons of that name. Or if one devises to a person, naming him, and there is nobody to answer the description in all respects, evidence is admitted to show what the testator meant. The ambiguity arises from the extrinsic fact or circumstance, and the evidence is required to give effect to the will; and from this results the necessity that extrinsic evidence should be received. But it is desirable that such evidence should be avoided, that all persons may judge from the face of the instrument itself of the extent of the devise. The modern doctrine is, that where a subject exists which satisfies the terms of the will, and to which they are perfectly applicable, there is no latent ambiguity. Evidence is only admitted *dehors* the will, from necessity, to explain that which

[Wusthoff v. Dracourt.]

would otherwise have had no operation.     In all the cases which·
have been decided, I can find none where parol evidence has been
admitted on the ground of a latent ambiguity in a case similar to the
present.; There is a subject matter to which the devise applies, and
no necessity can be alleged for the admission of parol evidence to
give effect and validity to this part of the will.   Parol evidence should
be avoided, whenever it can be done, that a purchaser or heir at law
may be able to judge, from the instrument itself, what lands are, or
are not to be affected by it.

Then as to the interest of the widow under the devise, it was the
opinion·of the court that the interest she acquired was a personal
privilege or easement in the house—the use merely of the rooms for
a home and shelter.     On the face of the instrument one cannot fail to
observe that the widow Wusthoff was the principal object of the testa-
tor's affections, if not of his bounty.     If the testator had stopped at
the first paragraph, it would not admit of doubt that she would have
a life interest in the subject of the devise ; for a devise of the use of
a thing is a devise of the thing itself.     He gives to Henrietta Miller,
the wife of Julien Dracourt, the house which he then occupied, to
be enjoyed by her during her life, &c. with a reservation of two of
the rooms for the use of her mother, during her life.     There is an
indication of the same intention, as regards both, in language equally
strong in a legal point of view.     But in the next paragraph he adds :
I desire by this fourth article that the widow Wusthoff may have
the choice of those two rooms (*chambres*) which shall best suit her ;
because I desire that the said widow Wusthoff shall be sure of (or
certain of) a shelter (or home) during the time she may have to live.
The object of this part of the will is, first, to give her the choice of
the two chambers, which he had previously devised for her use
during life ; and secondly, to express his feelings towards her, which
were of the most benevolent kind.     The court have construed this
as a restriction ; as indicative of an intention to narrow down the
previous devise to an easement or personal privilege merely.     We
think this is giving the instrument too literal an interpretation.     So
the widow had a comfortable home, which was the object of the tes-
tator, it matters not whether it was under that roof or another.     It
surely was not the intention to confine her there, when circum-
stances may have so changed as to render the situation burthensome
or life miserable.     His great desire was to insure her comfort during
the remainder of her life.     It is very true, as the judge states, that
there are many devises of a similar description, particularly in the
German counties.     A farmer devises the farmstead to one of his
sons, with a reservation to his widow of a room or rooms in the house,
the use of the kitchen, cellar, garden, &c. ; pasture for a cow; fire-
wood cut and brought to her door ; flour, meat, &c. provided from
the farm as long as she lives.     These devises have never yet re-
ceived a judicial construction ; and my experience does not enable
me to say what is the generally received· opinion on this subject in

[Wusthoff v. Dracourt.]

the country. Happily but few cases arise which would make it necessary to stir a question of this kind. There is but little disagreement among those who are interested in such devises ; the land is seldom sold for-the debts of the son, and never for the debts of the mother. I have, however, never understood that such a devise, which is taken in lieu of dower, was merely a personal privilege, which could not be enjoyed by substitution, or be levied on by the sheriff for her debts, or disposed of by her for a fair equivalent. It would, I think, be matter of regret if the law was so settled. It would put an end to this species of devise, which has been heretofore àttended with such happy effects. Let the law once be so understood, and it will be an easy task to render the situation of an aged and helpless woman so uncomfortable as to compel her to forego the personal enjoyment of such a privilege. Wood *v.* Banherst's Executors, 10 *Perkins* 368, has been cited and relied on by the counsel for the defendant in error. There the principal question was, whether the provision in favour of the daughter was a legacy for which the surety was liable on his bond. The court decided that it was a legacy. They also held that the use of the dwellinghouse, and the privileges secured thereon, were for her own personal accommodation, and not for any other tenant. The provision for supplying wood was clearly intended, as the court said, to depend on the implied condition of her residence in the house. In both particulars that case differs from the present. The case at bar is not a legacy but a devise of a freehold during life, and the enjoyment does not depend upon either an express or implied condition that she shall continue to reside in the house. The case of Marshall *v.* Blen, 2 *Atk.* 217, although not exactly in point, shows the extent to which the court of chancery will go in cases somewhat like the present. There, there was a devise from a husband to his wife of all household goods, furniture, plate, jewels, &c. for life or widowhood, afterwards to children and grandchildren. The court held that she might use the goods in her own or any other person's house, alone or promiscuously with other goods, or that she might let them out to hire.

Judgment reversed, and a *venire de novo* awarded.