## Best *versus* Hammond.

1. The general rule is, that parol evidence is admissible only to explain latent ambiguities or to apply provisions of a will to the subject or person intended, where the description is defective, uncertain or too general to be understood specifically.

2. A line described in a will as "beginning at an oak corner, north-west, near Wolfe's field, thence running a straight line to the mountain," is neither ambiguous nor uncertain.

May 22d 1867. Before WOODWARD, C. J., THOMPSON and AGNEW, JJ. STRONG and READ, JJ., absent.

Error to the Court of Common Pleas of *Franklin county*.

This was an action of ejectment, commenced June 21st 1865, by Nicholas Best, against Daniel Hammond for 28 acres of land.

Both parties claimed under the following clauses in the will of Innis Dougal:—

"I give and bequeath to Nicholas Best that part of my farm in Amberson's Valley beginning at a chestnut-oak corner, north west near Wolfe's field, thence running in a straight line to the mountain. Also, I bequeath to Nicholas Best, the lot above the orchard, making the old lane the line in a straight direction to Wilson's corner (a white-oak). Also I give and bequeath to Nicholas Best, the meadow next J. H. Dyarman, with a road through the lower end of the field above to the valley road. I give and bequeath to my brother Samuel Dougal the remainder of my farm in Amberson's Valley."

Samuel Dougal, the devisee, conveyed the land devised to him to the defendant. The dispute in the suit was, how the "straight line" in the devise to Best should be run.

On the trial before King, P. J., the defendant offered to prove

that the testator pointed out the line spoken of in Innis Dougal's will, which was to begin at a "chestnut-oak corner, north-west, near Wolfe's field, thence running in a straight line, to the mountain," was to be an extension of the line, from the Valley Road by the property of Mrs. Kirkpatrick to the chestnut-oak, thence in the same direction straight to the mountain.

The plaintiff objected to the testimony because there was no latent ambiguity in the will, because the testimony contradicts the language of the testator, and because the meaning of the testator cannot be explained by evidence outside of the will.

The evidence was admitted and an exception taken.

The witness testified:—"I copied a will in part and wrote it in part for Mr. Dougal. There was the same clause in the will that I wrote and copied. When I came to write that part of the will he spoke of the line running from the Valley road along Martha and Mary Kirkpatrick's lot to the chestnut-oak at Wolfe's corner, and thence a straight line to the mountain. I understood that it was to be a straight line with the original line of the survey. The chestnut-oak was the point at which the division between Best and Samuel Dougal was to commence. The chestnut-oak stood on the line that came up from the Valley road. The testator called it Wolfe's corner; said that it was a chestnut-oak tree. The testator said that the line from the Valley road to the chestnut-oak corner was already laid down on the land, and the line from the chestnut-oak to the mountain was to be a straight line. He spoke of the line from the Valley road to the chestnut-oak corner as already established and I understood from Mr. Dougal that the line was to be extended to the mountain in a straight line with what was established. I cannot recollect the exact words used by him, but this is what I understood it from what he said."

The plaintiff submitted these points:—

1. There is no latent ambiguity in the will of Innis Dougal, and it must be interpreted by what appears within the four corners of the paper.

2. The testator having directed that the division line between the part of his farm devised to the plaintiff, and the part devised to Samuel Dougal, under whom the defendant claims, should begin at a chestnut-oak corner near Wolfe's field, thence running in a straight line to the mountain; the true division line between the parties is a line commencing at the chestnut-oak corner and running by the most direct and shortest route to the base line of Innis Dougal's land on the mountain.

3. There is no warrant in the will which justifies the starting from any other point than the chestnut-oak corner adopted by the testator in his will.

The defendant submitted this point:—

If the line was intended by the testator to be a mere extension

[Best *v.* Hammond.]

of the line from the Valley road to the chestnut-oak, thence to the mountain, then the defendant is entitled to the verdict, and this is a question of fact for the jury to determine on all the evidence in the case.

The court charged:—

" The controversy in this case grows out of the doubt of what was meant by the testator in describing the devise to Best ' by a straight line from the chestnut-oak corner, near Wolfe's field, to the mountain.'

" The north-western boundary of the testator's farm in Amberson's Valley, was a straight line along the base of the mountain, or rather the side of the mountain, and nearly parallel with the range of the mountain.

" The chestnut-oak corner was at the end of a straight line on the other side of the tract, and the plaintiff contends that a true construction of the devise to Nicholas Best, requires that the straight line from the corner should be run to the line at the base of the mountain and at right angles with it. The defendant insists that it should simply be an extension of the line on which the chestnut-oak stands as a corner. Either of these lines would be a ' straight line to the mountain.' To determine this question of fact, or rather to shed such light upon it as would enable the jury to settle it, the defendant offers parol evidence to show that the testator intended the straight line to be an extension of a straight line already marked upon the ground, and it is objected to as inadmissible.

" The general rule is, that the intention of the testator must be collected *ex visceribus testamenti*, especially in regard to devises of real estate ; but ' when,' (as is stated in Greenleaf's Evidence, §290),' the description in the will of the person or thing intended is applicable with legal certainty to each of several subjects, extrinsic evidence is admissible to prove which of such subjects was intended.' * * * Geometrically speaking, a straight line is the shortest line between two given points, but here only one definite point is fixed. The surveyor says he can run twenty straight lines between the chestnut-oak corner and the mountain, and we are to discover, if possible, what was the line in the contemplation of the testator when he wrote his will. Can it be said that the line contended for by the defendant is ' wholly inapplicable to the subject intended, or said to be intended by the description in the will ?' If it is not, then, under the rule referred to, the evidence proposed is not inadmissible. * *

" Here we have a boundary designated in the will as a straight line, and it appears from the testimony, that this description is equally applicable to two straight lines between the points mentioned in the will, and for the same reason extrinsic evidence should be received to elucidate the intention of the testator. If

[Best *v.* Hammond.]

both *termini* of this straight line had been as distinctly defined as the one at the chestnut-oak corner, evidence could not be admitted to prove that the testator intended other and different *termini*, but when the *terminus* at the mountain is left in doubt we can discover no means of ascertaining the wishes of the testator, but by permitting the evidence offered to be received.   [In the absence of evidence to establish a contrary intent we believe it to be the duty of the jury to adopt the line contended for by the plaintiff, as it is the nearest and shortest distance from the chestnut-oak corner to the mountain, but if you believe, from the evidence, that the testator intended to fix as the boundary between these parties an extension of the straight line upon which this corner stands, to the mountain, you ought to find a verdict for the defendant.]"

There was a verdict for the defendant.

The plaintiff removed the case to the Supreme Court, and assigned for error the admission of the testimony objected to; the part of the charge included in brackets, and that the court did not instruct the jury to find for the plaintiff.

*J. McD. Sharpe,* for plaintiff in error, cited Duncan *v.* Duncan, 2 Yeates 302; Newell's Appeal, 12 Harris 197; Mann *v.* Mann, 1 Johns. Ch. 231; Cheney's Case, 5 Rep. 68; Wusthoff *v.* Dracourt, 3 Watts 243; Jones *v.* Newman, 1 W. Bl. Rep. 60; Thompson *v.* White, 1 Dallas 426; McMeen *v.* Owen, 1 Yeates 139; McDermot *v.* United Insurance Co., 3 S. & R. 609; Nixon *v.* McCallmont, 6 W. & S. 159; Morrison *v.* Morrison, Id. 516; Sennet *v.* Johnson, 9 Barr 335; Seitzinger *v.* Ridgway, 4 W. & S. 472; Stub *v.* Stub, 3 Barr 251.

The case was submitted without oral argument by the defendant in error, and he furnished no paper book.

The opinion of the court was delivered, October 31st 1867, by
THOMPSON, J.—It does not seem to be necessary, in order to a satisfactory determination of the errors assigned in this case, to define in what cases, or how far oral testimony, or testimony *dehors* a will, may be given to establish the meaning of the testator.   The general rule, undoubtedly is, that parol evidence is admissible only to explain latent ambiguities in a will, or to apply its provisions to the subject or person intended, where the description is defective, uncertain, or too general to be understood: 3 Watts 241; 8 Harris 55; 12 Harris 197; 6 Casey 425–437.

In Brownfield *v.* Brownfield, 8 Harris, *supra*, the testator described the division line of his farm which he desired to be run, thus: " thence, supposed, nearly an east course *to a post*, to a corner of John Brownfield, and my home place."   There were

[Best *v.* Hammond.]

several posts which might have been the terminus of a line, no more accurately defined than by the description, to be run "nearly an east course," and it was held that the *post* actually meant, might be ascertained by evidence *dehors* the will; not because it was strictly and technically a latent ambiguity, but to apply the description to the proper subject of it.

The case on hand differs from those referred to, in this important particular, namely, that there is no ambiguity in the description of the line directed to be run, or defect in terms, as to the subject described. "Beginning at a chestnut-oak corner, north-west, near Wolf's field, thence running in a straight line to the mountain," seems neither ambiguous nor uncertain. There appears to be no difficulty about the *termini* of the line, or that it cannot be laid down as described; and if so, it is a case in which parol evidence is not needed and not admissible: Wig. on Wills 17, and cases referred to under Proposition II. The testimony of William Mackey, admitted against the objection of the plaintiff, described a different line from that in the will. It was only because it did, that it was offered. The very difference, however, shows the error of the admission. The testator's line, represented by the will, was to begin at a chestnut-oak corner, north-west, and thence in "a straight line to the mountain." Geometrically this would be the most direct line through the testator's land to the mountain. The line proposed to be established by the parol evidence as the line intended by him, was the extension of a line from the chestnut-oak of a line running from the Valley road along Martha and Mary Kirkpatrick's lot *to the chestnut-oak* at Wolf's corner, thence in a straight line to the mountain. The *extension* of the line from the Valley road might result in a very different division of the land from that of a line beginning at the chestnut oak, and thence straight to the mountain, and the proof shows that it does. Thus to give effect to the testimony was to change the will of the testator, and make his oral declarations his will, instead of what he had executed and published according to the forms of law, as his will. It would directly tend to encourage frauds and perjuries, to permit wills to be affected or altered by proof of intention, from declarations of the decedent outside of what he had written as his will. All the formalities required in making a will by the statutes, were to prevent this, and it is the duty of courts to execute the law in its true spirit. We think the testimony should not have been admitted, and that there was error in this, as also in the charge predicated of it.

Judgment reversed, and *venire de novo* awarded.