## Smith, Appellant, v. Metzger.

*Will—Devise—Description of land—Boundaries.*

Testator owned land on which were two dwelling houses facing a street. The land extended within parallel lines back to another street. In the rear of the two houses on the portion of the land abutting on the back street testator built a bakehouse, which he operated until he went out of business a year prior to the execution of his will. About ten years prior to the date of his will he erected a fence separating the land appurtenant to the bakery from that adjoining the houses. In this fence were openings used as access to the bakery. At the time of his death testator occupied one of the houses, and rented the other to a nephew. The bakery was rented to a firm which had succeeded testator in business. By his will testator devised (his) "my dwelling house and lot attached thereto" to his sister. By a codicil he devised to the same sister the dwelling house occupied by his nephew and the land attached thereto. He gave, devised and bequeathed the entire remainder of his estate to others. *Held*, that the residuary devisees were entitled to the land occupied by the bakery.

Argued Nov. 13, 1906. Appeal, No. 235, Oct. T., 1905, by plaintiffs, from decree of O. C. Lancaster Co., Sept. T., 1904, No. 64, dismissing exceptions to adjudication in case of Levi Smith et al. v. Mary E. Metzger et al. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Exceptions to adjudication. Before SMITH, P. J.
The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*B. F. Davis*, for appellant.—The bakery property belonged to the residuary estate : Thompson v. Kaufman, 9 Pa. Superior Ct. 305 ; Lipman's Appeal, 30 Pa. 180 ; France's Estate, 75 Pa. 220 ; Smith's App., 23 Pa. 9.

*John E. Snyder*, with him *Oliver T. Rogers*, for appellees.

OPINION BY PORTER, J., February 25, 1907 :
Charles W. Metzger executed his last will on April 14,

1897, and a codicil thereto on May 1, 1897, and died on May 2, 1897. The part of the fund in the hands of the executor, the accountant, involved in this appeal is the rent collected from a certain bake-house property, fronting on south Christian street, and the lot of land thereto appurtenant. A dispute having arisen as to who was entitled to these rents, under the provisions of the will, the parties interested permitted the executor to collect the rents, and none of the assignments of error raised the question of the propriety of such action. The parties agreed that the rents should be collected by the executor, included in his account, and be distributed by the court to the parties to whom the bake-house property passed under the will. The decedent devised all his property to his widow during her life, the widow died on September 28, 1902, the rent included in this account accrued subsequently to her death and is, therefore, to be distributed to the parties in whom the estate in remainder vested.

The clauses of the will which are material to the determination of the question here presented are as follows : " After the death of my wife . . . . I give, devise, and bequeath my home, being my dwelling-house and lot of land attached thereto, No. 133 South Queen street, Lancaster, Pa., to my sister Mary E. Metzger, together with all the contents thereof, during her natural life, as a home for herself and my niece Clara Rogers." " The residue and remainder of my estate, real, personal, and mixed, I give, devise, and bequeath to my brother Gotlieb F. Metzger, my sister, Mary E. Metzger, my sister Caroline Rogers, my sister Louisa A. Smith, and my niece Clara Rogers, in equal shares and parts." The foregoing clauses and the clause in the codicil viz.: " I give, devise and bequeath to my sister, Mary E. Metzger, and my niece Clara Rogers, and their heirs in fee the dwelling-house and lot of land, No. 135 South Queen Street, and now occupied by my nephew, John Metzger, and the land attached thereto : " are the only parts of the will which touch the question here involved. That the testator died intestate as to no part of his estate is manifest. The residuary clause, above quoted, carried all the property that was not specifically devised. There was no uncertainty or ambiguity apparent on the face of the instrument which could justify the introduction of parol testimony to explain it. If

when this will came to be applied to the property of the decedent and the persons to whom he devised it any ambiguity was found to exist, such ambiguity was a latent one, arising from some extrinsic fact or circumstance, which rendered the application of the will doubtful.

There is no doubt as to the persons who were to take under this will, the identity of the devisees is certain, no other person has appeared who would come within the description of any one of them contained in the will. The condition of the testator's property and the uses to which it was devoted, at and for a long time prior to the execution of his will and down to the day of his death, was equally free from doubt. The testator lived with his family in the house which in his will he describes as " my home, being my dwelling-house and lot of land attached thereto, No. 133 South Queen Street ;" he had for years so used that house and lot of land attached thereto as a place of residence. The lot which was and had been used as appurtenant to this house as a place of residence was twenty-two feet in front on South Queen street and extended back eastwardly to a fence which separated it from the bakery property. The fence had been placed there by the testator at the time he erected the dwelling-house, No. 133 South Queen street, on the front of the lot, at least ten years prior to the execution of his will and he maintained that fence in the same position down to the day when his will took effect. The line between the property which the testator thus set apart and used for the purposes of his residence and that, in the rear, which he used for the purposes of his business as a baker, had thus been by the testator himself clearly defined. The land directly east of the lot which the testator had thus set apart for use as a home was used as a yard in connection with the business of the bakery, for the purpose of driving in teams to take away the product of the bakery. It afforded the only means of access to the bakery as constructed, for the building had no door opening on Christian street, the only outlet being through the yard. There may have been a gate in the fence between the two lots, but if there was it did not change the character of the uses to which the property on either side of the fence was devoted. The plaintiff had for many years been the proprietor of and operated the bakery, which was a manu-

factory of crackers, and not a mere store for the sale of the product. He may have had a gate in the fence so as to afford him a convenient passageway from his place of business to his home, but if he had, the effect would not be to make the manufactory an appurtenance of the dwelling-house. One controlling fact in the situation of these properties remains to be noticed and it removes the question whether the lot No. 133 is to be extended through to Christian street from the realm of reasonable doubt. The testator had retired from business in 1896, over a year prior to the execution of his will, and had rented the bakery building and the lot thereto appurtenant to the firm of Metzger Bros., composed of his nephews, at the annual rental of $140, payable quarterly, and the new firm had gone into possession of the property, operated the bakery, used the yard and paid the rent to Charles W. Metzger, the decedent. Charles W. Metzger, the testator, was at the time of the execution of his will and at the time that will took effect occupying as his home the dwelling-house, No. 133 South Queen street, and the lot of land attached thereto, extending back to the fence which separated it from the bakery property, which latter property was in the possession of his tenants, and was by them used for business purposes.

The condition of the property of the testator rendered equally certain the application of the devise of the "dwelling-house and lot of land, No. 135 South Queen street and now occupied by my nephew John Metzger, and the land attached thereto." John Metzger, the nephew, had for ten years prior to the execution of the will occupied the dwelling-house, No. 135 South Queen street, as a tenant under the testator, and paid a rental of $15.00 per month, and this tenancy continued down to and after the death of the testator. The house fronted on South Queen street and the land thereto appurtenant, as used by John Metzger during the entire period of his occupancy, had a frontage of twenty-five feet on South Queen street and extended back to the bakery property, from which it was separated by the side of a frame shed which stood on the bakery property, and a fence extended from the corner of the shed across the other part of the rear of the lot, to the line of the lot, upon the front of which stood the building No. 133 South Queen street. The line of the lot thus set apart as appurtenant

to the dwelling-house had been thus marked by the testator, and the shed and fence had been maintained in the same position from a time long before John Metzger became his tenant there, and that shed and fence had been maintained by him in the same position down to the time when he executed his will and until the day of his death. The testator had himself occupied the residence No. 135 South Queen street prior to the occupancy by John Metzger, and had placed a gate in the fence between the lot used in connection with the residence and the bakery property, which thus afforded him a convenient passageway from his place of residence to his place of business, but the line between the property which was set apart for the purposes of the residence and that which was devoted to the business was even at that time clearly defined. When the testator removed to the house No. 133 South Queen street and rented the house No. 135 South Queen street to John Metzger, the latter only went into possession of the lot which had been set apart as appurtenant to the house. The side of the frame shed and the fence which continued on the same line, although that fence had a gate in it, marked the lines between the property which John Metzger occupied as a residence and the bakery property of which the testator was the owner and of which he remained in possession. The testator remained in possession of the bakery property until a year before his death, when he leased it to the firm of Metzger Bros., composed of John Metzger, Harry Metzger and Charles Metzger, nephews of testator. The bakery property remained in the possession of this firm, and as a firm they paid rent for it, and the dwelling-house No. 135 South Queen street continued in the individual possession of John Metzger, who paid rent for the same, down until the date of the execution of the will and until the day when it went into effect. It thus appears that for over ten years prior to the death of the testator the possession of the dwelling-house, No. 135 South Queen street, and the lot thereto appurtenant and that of the bakery property had never been in the same persons. The building upon the bakery property was upon that part of the ground which had been set apart for the purposes of this building directly east of No. 135 South Queen street and occupied all the ground directly east of the lot upon which the dwelling-house was situated, in other words, if the

lot upon which No. 135 South Queen street is built were extended through to South Christian street the bakery building would occupy the entire South Christian street front of that lot.

The application of the will of the testator to his property as it existed at the time of the execution of his will and the time when that will went into effect disclosed no latent ambiguity, which warranted the introduction of parol testimony to give effect to the will. The description of each property, as contained in the will, was clear and accurate; as to each devise there existed a subject which satisfied the terms of the will, and to which they were perfectly applicable; in such a case there is no latent ambiguity: Wusthoff v. Dracourt, 3 Watts, 240; Best v. Hammond, 55 Pa. 409; Root's Estate, 187 Pa. 118; Thompson v. Kaufman, 9 Pa. Superior Ct. 305; Myers v. Myers, 16 Pa. Superior Ct. 511. The testimony to the effect that John Metzger and his family, occupying the house No. 135 South Queen street, had been accustomed to pass through the gate in the fence and go to the bakery, or across the lot appurtenant to the bakery, to the eastward, across the lot in the rear of No. 133 South Queen street, and through the gate onto Christian street, was wholly insufficient to establish in John Metzger possession of any part of the bakery property. The ownership and possession of the entire bakery property was in other parties. The utmost right that could be acquired by a long continued use of the yard as a passageway to Christian street, would be an easement for a right of way appurtenant to the lot fronting on South Queen street. But the evidence in the present case was wholly insufficient even for such a purpose. The testator owned the entire property and the mere fact that he permitted his tenants to walk through the yard of the bakery did not change the character of the uses to which he had for his own purposes devoted it.

The devise of " my dwelling-house and lot of land attached thereto, No. 133 South Queen street," carried with it only the land which the testator himself had used as an appurtenance of his dwelling, and it did not include the bakery property, or any part of it which he had for many years himself used for other purposes, and which at the date of the execution of his will was in the possession of other parties, as tenants of the

testator. And the same is true of the devise of the dwelling-house, No. 135 South Queen street, and the land attached thereto. The learned judge of the court below fell into the error of giving effect to testimony which was intended to make a new will for the testator. In Willard's Estate, 68 Pa. 327, Mr. Justice SHARSWOOD said: " In regard to the admissibility of the parol evidence of Henry F. Snyder, the scrivener who drew the will of William Waldo Willard, as to his understanding of what the testator intended; it would be in the teeth of every precedent and a virtual repeal of the act of assembly which requires all wills to be in writing." The learned judge of the court below gave undue weight to the fact that when, many years ago, the testator bought the two lots which comprised this entire property, the land extended clear through from South Queen street to South Christian Street. The South Christian street end of the lots was then wholly unimproved. Charles W. Metzger was the absolute owner of the property and he had a perfect right to improve it and divide it as he pleased. He built the bakery upon the Christian street end of the lots and set apart a portion of the Christian street end of both lots as appurtenant to the bakery, and for years so used the property. He had a perfect right to divide the property in his will, and by the terms of his will he clearly did so. It did not even appear from the will that the decedent had bought lots extending clear through from South Queen street to Christian street; the deeds to which the learned judge of the court below refers were extrinsic evidence. And they threw no doubt upon the intention of the testator as to the manner in which the property was to be divided.

The bakery property passed, under the will of Charles W. Metzger, under the devise of the residue of his estate, and to the parties who take under that clause of his will these rents should have been awarded.

The decree of the court below is reversed, and it is ordered that the costs of this appeal be paid out of the amount received as rents and included in the account, and the record is remitted to the court below with direction to make distribution in accordance with the foregoing opinion.