## Metzger's Estate.

*Orphans' Court—Jurisdiction—Decree of Superior Court—Res adjudicata—Judgments—Collateral attack.*

1. The judgment or decree of a court of competent jurisdiction, valid and regular on its face, in force and unreversed, cannot be impeached by the parties or privies thereto or by a stranger in a collateral proceeding in the same or another court.   It is conclusive not only as to the judgment or decree itself, but as to every fact directly or necessarily adjudicated or which was necessarily involved in or was material to the adjudication.

2. Where in the adjudication of an estate, the Orphans' Court had awarded the rentals of certain realty to certain claimants, and

the Superior Court on appeal reversed the decree and awarded the rentals to certain other claimants, from which decree no appeal was taken to the Supreme Court, the matter of the award of the rentals is res adjudicata and cannot subsequently be attacked in a collateral proceeding, even though in the meantime the Supreme Court may have decided that the claimants to whom the rentals were awarded were not the owners of the realty.

Argued April 19, 1913. Appeal, No. 254, Jan. T., 1912, by Clara L. Rogers, a devisee under the will of Charles W. Metzger, deceased, from the decree of the Superior Court, of Oct. T., 1911, No. 104, reversing decree of O. C. Lancaster Co., Sept. T., 1904, No. 64, making distribution in the Estate of Charles W. Metzger, deceased. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Appeal from Superior Court.

The opinion of the Superior Court by PORTER, J., was as follows:

The Orphans' Court of Lancaster County on July 20, 1905, entered a decree adjudicating the balance in the hands of John E. Snyder, surviving executor of Charles W. Metzger, deceased, for distribution to those entitled to take under the will, to be $32,368.01. There was included in the account which made up that balance the sum of $238.27 which had been collected by the executor as rent for a certain bakery property; a dispute having arisen as to who took the property under the provisions of the will and the rents having been collected by the executor and included in his account by an arrangement among all the parties in interest, in order to avoid litigation. The court in its decree distributing the balance in the hands of the executor awarded that sum of $238.27 to Mary E. Metzger and Clara Rogers. The executor did not file exceptions to that decree. The only parties who did in any manner question that decree were Levi B. Smith and others who took under the residuary clause of the will of the testator and the only exception which

they filed in the court below alleged that the court erred in awarding the $238.27 in question to Mary E. Metzger and Clara Rogers, which sum the exceptions averred should have been awarded to them, under the residuary clause of the will. The learned judge of the court below on October 26th, 1905, in disposing of those exceptions, filed an opinion in which he stated very clearly and at length his reasons for decreeing the part of the fund in question to Mary E. Metzger and Clara Rogers, and dismissed the exceptions and confirmed the adjudication absolutely. From that decree neither the executor nor the present appellees appealed, they permitted it to stand unchallenged, and it is now idle to assert that that money has not been judicially determined to be in the hands of the accountant. The present appellant and others, the residuary legatees under the will, did appeal from that decree, but the only part of the decree of the court below which they attacked was the distribution of the rent received for the bakehouse property to the appellees. The result of that appeal to this court is reported in Smith v. Metzger, 32 Pa. Superior Ct. 596, where the facts disclosed by the evidence which came up with the record are fully stated. There had been heard at the audit in the court below testimony which accurately described the property of the testator at the time his will was executed and the time it went into effect, having been offered for the purpose of identifying the properties devised. This testimony the court below had disregarded and in his opinion filed dismissing the exceptions had said: "At the request of all parties, testimony was taken for the purpose of identifying the properties devised. This we think was an error." This court held that the testimony showing the actual condition of the testator's property at the time his will was executed and at the time it went into effect was admissible for the purpose of identifying the properties to which the several devises applied. There was no dispute under the testimony as to how the property of the testator had

been sub-divided, the uses to which it had been applied and the exact limits which the testator had fixed for each of the sub-divisions. There had been no change in the condition of the testator's property from the time his will was written to the time of his death.

The evidence extrinsic the will being before the court and there being no controversy as to the condition of the property, we said: "The application of the will of the testator to his property as it existed at the time of the execution of his will and the time when that will went into effect disclosed no latent ambiguity, which warranted the introduction of parol testimony to give effect to the will. The description of each property, as contained in the will, was clear and accurate; as to each devise there existed a subject which satisfied the terms of the will, and to which they were perfectly applicable; and in such a case there is no latent ambiguity: Wusthoff v. Dracourt, 3 Watts 240; Best v. Hammond, 55 Pa. 409; Rott's Est., 187 Pa. 118." The appellees had at the audit introduced testimony to the effect that the testator had intended to make a disposition of his property different from that which the words of his will implied. This court held, that as the actual condition of the testator's property and the sub-divisions which he had made of it fully satisfied the terms of the will, the instrument as written must stand. The extrinsic evidence was admissible for the purpose of identifying the property and showing the manner in which the testator had divided it and given to each part a distinct designation. The facts thus established by the undisputed testimony, led this court to hold that the bakehouse property did not pass to Mary Metzger and Clara L. Rogers under the devises to them of specific parts of the real estate, but that it did pass under the devise of the residue of the estate. We reversed the decree of the court below, on February 25th, 1907, and remitted the record with direction to make distribution in accordance with the opinion which we filed. The appellees applied to the Supreme

Court for leave to appeal from our decision, and their petition was by the Supreme Court refused. They subsequently applied to this court for permission to reargue the case and their petition was by this court refused. The question of the ownership to this fund of $238.27 had thus been finally determined, so far as the State of Pennsylvania has authorized any system of judicial procedure for accomplishing that result.

"The judgment of the law, like the hand of death, puts an end to all strife:" Swan v. Scott, 11 S. & R. 155. This case seems, however, to be an exception to the salutary principle thus announced by our Supreme Court. About four years after this court had reversed the decree of the court below and the Supreme Court had refused an appeal from our decisions, the appellant presented to the court below his petition praying that the fund be distributed in accordance with our decree, upon which petition the learned judge of the court below granted a rule to show cause why the prayer of the petitioner should not be granted. The executor, the accountant, in whose hands the money has been adjudged to be, filed no answer to this rule, he seems to have been willing to obey the mandate of the law. An answer was filed by Mary E. Metzger and Clara L. Rogers, the appellees, in which they in substance averred that the decision of this court was erroneous. The court below discharged the rule which it had granted upon the petition of the appellant and dismissed the petition, thus refusing to carry into effect the final decree of this court, from which the Supreme Court had refused to allow an appeal. The learned judge of the court below seems to have been of the opinion that the decision of the Supreme Court in another case, Metzger's Estate, 222 Pa. 276, warranted his action.

This belief was founded upon a misconception of the effect of the decision upon which he relied as well as of the grounds upon which that decision was based. The opinion of Mr. Justice STEWART, of the Supreme Court,

distinctly states that the decision in Smith v. Metzger, 32 Pa. Superior Ct. 596 was conclusive as to the ownership of the particular fund with which we are now dealing. After our former decision had been made the present appellant and others filed in the Orphans' Court of Lancaster County a bill for partition of the real estate from which the rents with which we are now dealing had been derived. The appellees filed an answer to that bill, denying the right to partition, and alleging their ownership of the land, and without taking any testimony the parties went to hearing on bill and answer, and the learned judge of the court below dismissed the bill or petition. This appellant appealed from that decree to the Supreme Court and the decree of the court below was affirmed, but the reason for that action clearly appears in the opinion of Mr. Justice STEWART who spoke for the Supreme Court. "Since it was a question of identifying the things specifically devised, the case was one which properly called for parol evidence to enlighten the court with respect to matters of which, when made known to it, it would take judicial cognizance so far as not to require special proof that the testator did, in point of fact, dictate his will with reference thereto. But it was submitted on bill and answer without a particle of evidence extrinsic to the will. This was because of a mistaken view entertained that, since there was no apparent ambiguity in the testamentary description of the ground specifically devised, parol evidence was inadmissible.

The learned judge in the opinion filed gives us clearly to understand that this was the view taken by the court; and the fact that there was no evidence offered can be explained only on the ground that counsel were of the same mind." Although the Supreme Court thus expressly declared to be erroneous the view of the court below that extrinsic evidence was not admissible to identify the property devised, it was beyond their power to reverse the judgment upon that ground for the reason

stated in the opinion. "While the view taken by the court with respect to this matter was a mistaken one, it is not made a subject of exception, and is not brought to us for review by any assignment. The effect of it was to limit the inquiry to the terms of the will itself, the court having nothing else before it. The learned judge of the Orphans' Court somehow, certainly not from the pleadings in the case nor yet from the will, but with the submission of the parties, as the argument shows, derived the fact that the ground in dispute is composed of the rear ends of two adjoining lots fronting on South Queen street in the City of Lancaster, both of which—however the fact may now be—originally extended back about two hunderd and forty-five feet to a public alley in the rear. But for this fact, judicially imported into the case, disclosing as it does the location of the disputed ground with reference to that admittedly within the specific devise, no correct understanding of the real dispute would have been possible." And again, "With respect to the first, it is only necessary to remark that the will itself furnishes not merely an intelligible and sufficient description whereby the thing devised may be identified with reasonable certainty, but the description is so definite that without some extrinsic evidence to show that lot No. 133, when the will became operative, was not of the dimensions it had been when the testator acquired it —as that another lot had been carved from it and given another and distinct designation by number or otherwise—it is impossible to fit the description of the will upon anything else than the entire lot as it was then when testator acquired it"—"we are permitted to know exactly what lot No. 135 contained when the testator acquired it, and are without anything, either in the will or extrinsic to it, to show that it was ever reduced in size."

This opinion clearly and distinctly affirms the propriety of introducing extrinsic evidence showing the manner in which a testator had treated his land, the subdivisions which he had made of it, and the condition in

which the property was, at the time his will was executed and went into effect, for the purpose of identifying the various parcels designated in his will. The difficulty with the position of the appellant in that case was that he had not produced the extrinsic evidence necessary to show the condition of the property at the time the will took effect. The questions involved in the case upon which the Supreme Court passed were wholly different from those considered by this court in determining the ownership of the fund with which we are now dealing. The Supreme Court did not have before it the extrinsic evidence which was presented to and considered by this court.

The order of the court below is reversed, and it is ordered that the costs which accrued upon the former appeal, in which we entered a decree on February 25th, 1907, be paid out of the amount collected as rents from the bakehouse property, and included in the account, and the record is remitted to the court below with direction to make distribution of the balance of said $238.27 under the residuary clause of the will, to wit: "The residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath to my brother Gottlieb F. Metzger, my sister, Mary E. Metzger, my sister Caroline Rogers, my sister, Louisa Smith, and my niece, Clara Rogers, in equal shares and parts, if they are living at the time of the death of my said wife, and if any of them are deceased at the time of the death of my said wife, then to the issue or descendants of such as are deceased leaving issue, etc. ;" and it is ordered that the appellees pay the costs of this appeal.

*Error assigned* was the decree of the Superior Court.

*John E. Snyder,* for appellant.

*B. F. Davis,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, June 27, 1913:

This is an appeal from the decree of the Superior Court, reversing a decree of the Orphans' Court of Lancaster County. The opinion of the Superior Court conclusively demonstrates the correctness of its decree, and shows the wholly indefensible position as well as the error in the conclusion of the learned judge of the Orphans' Court. It needs nothing more than a brief statement of the material facts to convict the Orphans' Court of palpable error.

The surviving executor of Charles W. Metzger, deceased, filed an account in the register's office of Lancaster County by which there appeared a balance for distribution of over $32,000. By an agreement of all the parties concerned there was included in this balance the sum of $238.37 which the executor had collected as rent for certain real estate of the testator. In the adjudication the Orphans' Court awarded the rentals to Mary E. Metzger and Clara Rogers, the latter being appellee in the present proceedings. The executor filed no exception to the decree, but Levi B. Smith, the appellant here, and other residuary legatees, objected to the award of the rentals to Metzger and Rogers, and filed an exception alleging that the court erred in not awarding the fund, representing the rentals, to the exceptants. The learned judge of the Orphans' Court filed an elaborate opinion in which he overruled the exception, and on October 26, 1905, confirmed the adjudication absolutely. Smith and the other exceptants appealed from the decree to the Superior Court and assigned as error that part of the decree awarding the rentals to Metzger and Rogers. In an opinion filed February 25, 1907, the Superior Court reversed the decree of the Orphans' Court and awarded the fund in controversy to the residuary legatees: Smith v. Metzger, 32 Pa. Superior Ct. 596. The record was remitted to the Orphans' Court "with directions to make distribution in accordance with the foregoing opinion."

About four years after this decree was entered, Levi B. Smith presented his petition to the Orphans' Court, reciting the adjudication, its reversal by the Superior Court, and the decree directing distribution of the fund in controversy to himself and others, and obtained a rule on Metzger and Rogers, the other claimants to the fund, to show cause why the court should not make an order distributing the fund in accordance with the decree of the Superior Court. An answer was filed admitting the decree of the Superior Court directing payment of the fund to the residuary legatees, but averring that in a proceeding in partition, subsequent to the decision of the Superior Court, this court had determined that the title to the real estate producing the fund was in Metzger and Rogers and that, therefore, they were entitled to the fund awarded to the residuary legatees by the Superior Court. In an opinion disclosing not only a misconception of the facts which were as an open book before him but also a misapprehension of the legal effect of the decree of the Superior Court and of the judgment of this court in the partition proceedings, the learned judge of the Orphans' Court dismissed the rule to show cause why distribution should not be made to Smith et al. in pursuance of the decree of the Superior Court, and directed the costs to be paid by the petitioner. Smith appealed to the Superior Court which reversed the decree of the Orphans' Court and directed the fund to be paid to the residuary legatees. Clara L. Rogers has taken this appeal.

As suggested above, a mere statement of the facts convicts the Orphans' Court of manifest error in refusing to obey the mandate of the Superior Court and distribute the fund to the residuary legatees. The fund was included in the executor's account, it was awarded by the decree of distribution made by the Orphans' Court, this decree was reversed by the Superior Court, and the fund was directed by that court to be paid to the residuary legatees. It must be conceded that the

Superior Court had jurisdiction to hear and adjudicate the appeal and that for four years prior to the present proceedings its decree had been in force and is still in force and unreversed. It is immaterial what debtor items were included in the administrator's account, whether they were rentals of real estate or moneys obtained from any other source, the decree of the Superior Court as to the parties entitled to the fund for distribution was conclusive until it was vacated by that court or successfully attacked and set aside in a direct appeal to this court. It is the settled law of this State that in the absence of fraud or collusion a judgment or decree of a court of competent jurisdiction, valid and regular on its face, in force and unreversed, cannot be impeached by the parties or privies thereto or by a stranger in a collateral proceeding in the same or another court. It is conclusive not only as to the judgment or decree itself but as to every fact directly or necessarily adjudicated or which was necessarily involved in or was material to the adjudication. It is, therefore, apparent that so far as the record discloses there is no legal reason why the decree of the Superior Court should not be enforced and the fund be paid in accordance therewith to the residuary legatees.

The learned judge of the Orphans' Court offers as a justification of his refusal to enforce the decree of the Superior Court that "it has been definitely settled by a decree of the Supreme Court that Mary E. Metzger and Clara Rogers are the devises" of the land producing the fund in dispute, and that, therefore, the residuary legatees to whom it was awarded by the Superior Court are not entitled to it. The decree of this Court referred to by the learned judge was entered in the partition proceedings in Metzger's Est., 222 Pa. 276. The learned Orphans' Court judge overlooked the conclusive effect of the decree of the Superior Court which was not and could not be impeached by our decree which was entered in another and collateral proceeding. It is true

that the title to the lands producing the rentals in dispute here was involved in the partition proceeding and that, as the case was then presented to us, we held that the title was in Metzger and Rogers, but the right to the rentals distributed by the decree of the Superior Court was not before us and was not adjudicated by our decree. On the contrary, we distinctly ruled that the decree of the Superior Court was conclusive as to what was involved in that case, which was the right to the fund for distribution. In the opinion of this court it is said: "Unappealed from, it (the decree of the Superior Court) is conclusive as to what was involved in the case; but that was nothing more than the particular fund which was before an auditor for distribution." It is, therefore, apparent that the learned Orphans' Court judge not only had no ground for holding that our decree in Metzger's Estate justified him in not obeying the decree of the Superior Court, but he knew we had distinctly held that the decree was conclusive as to the fund awarded to the residuary legatees. It was the duty of the learned judge to obey and carry into effect the decree of the Superior Court distributing the fund, and the failure to do so with a knowledge of all the facts and presumably of the law requiring such obedience, was a misconception of judicial duty.

The decree of the Superior Court reversing the decree of the Orphans' Court is affirmed at the cost of the appellant.