## Roseberry's Estate

*J. W. Moyer* and *W. M. Stapleton,* for petitioner; *C. E. Berger,* contra.

GANGLOFF, P. J., October 23, 1933.—Frank Roseberry purchased at sheriff's sale certain real estate situate on the west side of Coal Street in the City of Pottsville, and by deed dated September 12, 1931, recorded in deed book no. 555, page 338, the sheriff conveyed this real estate to him. Thereafter, under date of December 23, 1931, Roseberry executed a declaration of trust, recorded in the recorder's office in miscellaneous book no. 62, page 300, wherein he declares that the real estate so acquired by him was in fact acquired by him in trust for the use and benefit of the next of kin of his mother, Elizabeth D. Roseberry, deceased, and of his aunt, Mary Heupcko, deceased, their heirs and assigns, as tenants in common, and that upon sale thereof the proceeds of sale, less expenses and a certain judgment lien of $900, he will "hold in trust and pay over . . . to the heirs of said Elizabeth Roseberry and Mary Heupcko, respectively, their shares therein free, clear, and discharged of and from any and every encumbrance thereon by me or my heirs".

Frank Roseberry died on February 3, 1932, before sale of this real estate was accomplished. On March 29, 1933, the Court of Common Pleas of Schuylkill County, upon petition presented, appointed The Pennsylvania National Bank and Trust Company, of Pottsville, Pa., as trustee in place of the deceased trustee. A bond in the sum of $7,000 was filed and approved. On April 19, 1933, the substituted trustee petitioned the Court of Common Pleas of Schuylkill County, under the Revised Price Act of 1917, for leave to sell said real estate at public sale, and on May 15, 1933, that court made an order for the sale of this real estate at public vendue. William Buechley, Jr., became the purchaser at the sale on June 16, 1933, and at that time paid the down money, amounting to 10 percent of the purchase price. The terms of sale provided for payment of the balance upon delivery of a deed conveying a good and marketable title free and clear of all liens.

Sometime after the sale, but before completion thereof, the purchaser notified the trustee that the sale, in the opinion of his counsel, was "without competent and lawful authority and would not serve to pass a good merchantable title to said premises", upon the ground that the court of common pleas was without jurisdiction in view of the provisions of the Act of June 26, 1931, P. L. 1384, amending section 9 of the Act of June 7, 1917, P. L. 363.

On September 18, 1933, William Buechley, Jr., the purchaser at the above-mentioned public sale, presented his petition to this court, reciting the foregoing facts and praying for a rule on The Pennsylvania National Bank and Trust Company, trustee, to show cause "why the sale should not be set aside for want of proper authority to make the same and execute a good and sufficient deed in accordance with the conditions of sale, and why it should not

forthwith return to your petitioner the down money paid by him without further demand."

The rule issued, and respondent trustee filed an answer raising preliminarily the question of jurisdiction in the orphans' court to set aside the orders made by the Court of Common Pleas of Schuylkill County. Briefs of argument were filed by both sides, and the matter is now before us for disposition upon petition, answer, and briefs, without oral argument.

The facts as above recited are not in dispute. The trust is inter vivos. The questions involved are questions of law.

We must confine ourselves to the pleadings in this case. This court is not asked to appoint a substituted trustee upon the ground that the order of the court of common pleas appointing a trustee is void or to make an order of sale for a like reason. What this court is in fact asked to do, without more, is to set aside two decrees made by the Court of Common Pleas of Schuylkill County, one appointing a substituted trustee for Frank Roseberry, deceased trustee, and the other authorizing the substituted trustee to make sale of certain real estate. The basis of this request lies in the allegation that the court of common pleas was without jurisdiction in the premises.

If the court of common pleas was without jurisdiction, does the orphans' court have power to set aside its orders on that ground? Again, whether the court of common pleas has jurisdiction or is without jurisdiction in this matter, is the orphans' court the proper court to appeal to for a ruling upon the question of jurisdiction in a proceeding such as this is?

If the court of common pleas has jurisdiction, its judgment cannot be collaterally impeached in the orphans' court for, the jurisdiction existing, the subsequent action of the court in the exercise of its judicial authority can only be questioned on appeal: Comstock v. Crawford, 3 Wall. 396; McClain's Estate, 180 Pa. 231; Myers et al. v. Crick, 271 Pa. 399.

But we are asked to set aside a decree of the court of common pleas upon the ground that it did not, and does not, have jurisdiction. While it is true that where a court is without jurisdiction in the premises its acts and proceedings can be of no force or validity, nor can it by its decision or otherwise acquire jurisdiction: Thompson v. Lyle, 3 W. & S. 166; nevertheless can the orphans' court, in the absence of statutory authority, set aside the decree of the court of common pleas? We know of no statutory authority giving such power. As is well known, the orphans' court is a court of limited jurisdiction. The real question here is not whether the court of common pleas had jurisdiction to make the orders in question, but our sole question is whether the orphans' court can by decree set aside an order of another court. This question has been touched upon in a number of cases not parallel to or on all fours with our case, but these cases point the way to an answer to our problem.

In Moxham & Ferndale Bridge Co. v. Cambria County, 270 Pa. 494, the court of quarter sessions of that county entered a decree declaring a certain bridge a county bridge and that the taking of tolls thereon should cease. No exceptions were filed in the county's behalf, but the bridge company appealed to the Superior Court, which affirmed the decree of the quarter sessions: 36 Pa. Superior Ct. 298. The bridge company thereupon appealed to the common pleas from the award of damages made by the jury of view. On petition of the bridge company, the venue of the case was changed to Blair County, where a verdict was found in its favor fixing the amount of compensation for the taking of its property. The County of Cambria filed a motion for judgment in its behalf notwithstanding the verdict, which was refused. An appeal followed and this is what the Supreme Court said: "The basis of the appeal is, that the

county is not liable to compensate the plaintiff for the taking of its bridge, because the quarter sessions was without jurisdiction to condemn it, (a) since the bridge was located within the corporate limits of the City of Johnstown, and therefore could not be taken as a county bridge; and, (b) since the bridge was not built over a river or stream crossing a road on which the public was required to travel as provided by the Act of 1876. These positions, relied upon at the trial of the case, in effect asked the Court of Common Pleas of Blair County to set aside a decree of the Court of Quarter Sessions of Cambria County; a rather startling proposition under our judicial system. The latter court, by decree, in a proceeding in which no exceptions were filed by the county, had declared the bridge to be just what the appellant asked the former tribunal to adjudge it not to be; there would be an end of orderly judicial procedure if such results as appellant seeks could be brought about.

"The objections now raised should have been broached in the court of quarter sessions; failing to raise them there, and permitting the decree adjudging the bridge a county bridge to be entered without exception, appellant foreclosed its right to challenge that decree anywhere", citing McClain's Est. 180 Pa. 231; Wilson v. City of Scranton, 141 Pa. 621. See also Metzger's Estate, 242 Pa. 69.

On the other hand, want of jurisdiction need not appear on the record before the same may be attacked collaterally: Smith et al. v. Wildman, 178 Pa. 245.

In the latter case, an administrator, 10 years after the death of decedent, petitioned the orphans' court for authority to sell real estate to pay a debt which was unsecured. The petition set forth the debt to be paid but did not state the date of decedent's death, nor did it appear from the petition itself that the lien of decedent's debt on the real estate had expired under the act of assembly then in force. The court made the order of sale, and the real estate was sold by the administrator. Several years afterward, the heirs of the decedent brought an action of ejectment against the persons in possession of the land, claiming title under the orphans' court sale. The court found that the plaintiffs were entitled to recover and held: "An unauthorized decree of an orphans' court for the sale of lands will not stand until reversed in a regular course of appeal, but may be questioned in a collateral suit by or against a person claiming under the decree, whether the want of jurisdiction appears affirmatively on the record or not."

Want of jurisdiction, then, may be asserted in a collateral proceeding, but is the instant case a collateral proceeding? It is true the proceeding is brought in another court but it is brought in the form of a direct attack upon the proceedings in the common pleas. In fact, the relief prayed for is simply a decree, without more, declaring the proceedings in the common pleas void for want of jurisdiction. That is quite different from the situation in Smith et al. v. Wildman, supra.

Objection to the jurisdiction may be taken at any stage of the proceedings: Musselman's Appeal, 101 Pa. 165.

A court has judicial power to hear and determine the question of its own jurisdiction: Silver v. Schuylkill County, 32 Pa. 356. Difficulties constantly arose as to the proper method of raising questions of jurisdiction under the various acts of assembly, and the Act of March 5, 1925, P. L. 23, appears to have been enacted to overcome some of these difficulties. This act provides:

"Section 1. . . . That wherever in any proceeding at law or in equity the question of jurisdiction over the defendant or of the cause of action for which suit is brought is raised in the court of first instance, it shall be preliminarily determined by the court upon the pleadings or with depositions, as the case may require; and the decision may be appealed to the Supreme Court or the Superior Court, as in cases of final judgments.

"Section 2. All such preliminary questions shall be raised by petition setting forth the facts relied upon, whereupon a rule to show cause shall be granted, and such preliminary question disposed of by the court. Such procedure shall be deemed de bene esse only and shall not operate as a general appearance."

It is, of course, obvious that appeals do not lie from the court of common pleas to the orphans' court, for the latter court is one of concurrent jurisdiction. The proper way to raise a question of jurisdiction such as is here raised is by petition and rule, as indicated in the above-quoted act of assembly, or perhaps a case stated would accomplish the same object.

Without attempting further to discuss the merits of the controversy and solely for want of jurisdiction, we dismiss the petition without prejudice.

And now, October 23, 1933, the petition of William Buechley, Jr., is dismissed without prejudice.            From M. M. Burke, Shenandoah, Pa.